UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

MAURICE McCLUNG, JR.,

        Petitioner,

        v.                      CAUSE NO. 1:21-CV-239-HAB-SLC

WARDEN,

        Respondent.

## OPINION AND ORDER

Maurice McClung, Jr., a prisoner without a lawyer, filed a habeas corpus petition to challenge his conviction for attempted murder, robbery, and unlawful possession of a firearm under Case No. 27C01-808-FA-155. Following a jury trial, on September 11, 2009, the Grant Circuit Court sentenced McClung to seventy years of incarceration.

## FACTUAL BACKGROUND

In deciding this habeas petition, the court must presume the facts set forth by the state courts are correct unless they are rebutted with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The Court of Appeals of Indiana summarized the evidence presented at trial:

> On August 14, 2008, Darrell Hollins ("Hollins") was in Marion, Indiana with his friend, Matthew Dragoo ("Dragoo"), to buy Lortabs from Tina Jones ("Tina") for pain he experienced from a previous automobile accident. Tina showed Hollins some marijuana she had and told Hollins that her son, Ralph Jones ("Ralph"), could arrange for Hollins to buy some. Because Hollins had lost his job ten months earlier, he was dealing marijuana to make ends meet until he could find legitimate employment. Hollins told Tina to give Ralph his contact information and left. Tina called Ralph with Hollins's contact information, and Ralph made contact

with Hollins. After several calls between the two, Hollins arranged to buy two pounds of marijuana from Ralph for $2,200. Ralph suggested that they meet at the Greentree Apartments in Marion. At around 5:00 p.m., Hollins and Dragoo drove to the Greentree Apartments. Ralph had told them where to find him in the complex and that he would be driving a black Grand Am.

After arriving at the apartment complex, Hollins saw Ralph's black Grand Am backed into a parking spot and pulled in beside it. Hollins exited his car, and Dragoo remained in the car. Ralph was waiting for Hollins with another man, Joey Bolden ("Bolden"). The two approached Hollins and introduced themselves. Hollins then followed Ralph into the "far foyer on the right" side of the apartment building. Hollins entered the foyer behind Ralph with Bolden following them. As he walked in, Hollins saw McClung standing beside the stairs with Allen Horton ("Horton"). Hollins did not expect to meet anyone other than Ralph at the Greentree Apartments.

Hollins had not previously met Ralph or Bolden, but he had met McClung and Horton prior to that date. Hollins's cousin was a tattoo artist, and Hollins had previously seen the work his cousin had done on McClung, which included a panther and a grim reaper sitting on a throne. Hollins had met McClung about seven years earlier, when Hollins was sixteen years old. He had met Horton a year before encountering him in the foyer, when they lived in the same apartment complex.

Earlier in the day, Ralph, McClung, Bolden, Horton, and Cletus Luster had devised a plan to rob Hollins. They took mulch from Tina and placed it inside some plastic grocery bags. They planned to rob Hollins when he arrived to purchase the marijuana at the Greentree Apartments. When Hollins walked into the foyer, he saw a duffle bag that contained two knotted Wal–Mart plastic bags on the staircase. Hollins walked over to the duffle bag and saw that the plastic bags contained mulch. He immediately knew he was going to be robbed. As Hollins looked to his right, he saw McClung give Ralph a "look" and then saw a gun in McClung's hand. Without saying a word, McClung began shooting Hollins from approximately two feet away. McClung shot Hollins once in the leg, twice in the stomach, once above the heart, and once in the left arm. Hollins fell back and tried to kick the door open behind him, while Ralph and Horton tried to grab him and drag him back inside. As Hollins attempted to turn and run away, McClung followed and shot him two more times. McClung shot Hollins in the lower back, and Hollins grabbed his money and threw

it at McClung. Hollins fell to the ground, and McClung approached him and shot him in the upper left shoulder.

Hollins lost consciousness, and as he awoke, he saw Ralph, McClung, and Bolden picking his money up off of the ground. Hollins then jumped up and grabbed his arm because it felt as if it was "barely attached." He tried to get to his car, but fell again. Dragoo helped Hollins into the car as McClung, Ralph, Bolden, and Horton fled. Dragoo picked up the remaining money at Hollins's request. The next thing that Hollins remembered was speaking to the paramedic and telling her that he was shot "everywhere."

The paramedic was the last thing that Hollins remembered seeing. As a result of the extreme blood loss from his gunshot wounds, Hollins had a stroke, which disabled his optic nerve and rendered him blind. Hollins suffered seven total gunshot wounds. Because of these wounds, his intestines and bowels had to be rerouted and his gall bladder removed. He breathed through a tracheotomy tube and had a feeding tube for six months. One of the bones in Hollins's left arm was shattered, and he had to undergo surgery to regain use of the arm. Hollins was hospitalized for four months after being shot and had continuous health problems as a result of his injuries.

Marion Police Officer Jeff Wells ("Officer Wells") responded to a dispatch of the shooting and stopped Ralph and Bolden in the black Grand Am. When they were stopped, both men had wadded-up money in their possession. McClung's forty-five caliber handgun, shirt, and hat were found in a trash barrel a short distance from the Greentree Apartments. Three bullets were left in the gun. Three bullet casings located at the crime scene matched the gun found. The magazine of the gun would hold ten rounds. Police officers located Horton the next day, and McClung eventually turned himself in to the police.

The State charged McClung with attempted murder as a Class A felony, armed robbery as a Class A felony, and unlawful possession of a firearm by a serious violent felon as a Class B felony.

* * *

At the conclusion of the trial, the jury found McClung guilty of attempted murder as a Class A felony and armed robbery as a Class A felony. In a subsequent proceeding, the trial court found McClung guilty of unlawful

possession of a firearm by a serious violent felon, a Class B felony, after he
admitted he had the prior convictions listed in the charging information.

* * *

[T]he trial court sentenced McClung to fifty years for Count I, Class A
felony attempted murder, fifty years for Count II, Class A felony armed
robbery, and twenty years for Count III, Class B felony unlawful
possession of a firearm by a serious violent felon. The trial court ordered
the sentences for Counts I and II to be served concurrently to each other
and consecutively to Count III for an aggregate sentence of seventy years
executed.

ECF 9-5 at 2-7; *McClung v. State*, 925 N.E.2d 508 (Ind. App. 2010).

In the habeas petition, McClung argues that he is entitled to habeas relief because

trial counsel provided ineffective assistance by failing to investigate and present an alibi

defense and by failing to investigate a disinterested witness. In the traverse, McClung

includes arguments for other claims, but the court declines to consider these claims

because McClung did not include them in the petition. *See* Rule 2(c)(1) of the Rules

Governing Section 2254 Cases ("The petition must specify all the grounds for relief

available to the petitioner."); *Jackson v. Duckworth*, 112 F.3d 878, 880 (7th Cir. 1997) ("[A]

traverse is not the proper pleading to raise additional grounds.").

## PROCEDURAL DEFAULT

Before considering the merits of a habeas petition, the court must ensure that the

petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A);

*Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004). To avoid procedural default, a

habeas petitioner must fully and fairly present his federal claims to the state courts.

*Boyko v. Parke*, 259 F.3d 781, 788 (7th Cir. 2001). Fair presentment "does not require a

4

hypertechnical congruence between the claims made in the federal and state courts; it merely requires that the factual and legal substance remain the same." *Anderson v. Brevik*, 471 F.3d 811, 814–15 (7th Cir. 2006) (citing *Boyko*, 259 F.3d at 788). It does, however, require "the petitioner to assert his federal claim through one complete round of state-court review, either on direct appeal of his conviction or in post-conviction proceedings." *Lewis*, 390 F.3d at 1025 (internal quotations and citations omitted). "This means that the petitioner must raise the issue at each and every level in the state court system, including levels at which review is discretionary rather than mandatory." *Id.* "A habeas petitioner who has exhausted his state court remedies without properly asserting his federal claim at each level of state court review has procedurally defaulted that claim." *Id.*

On post-conviction review, McClung presented his claim that trial counsel failed to investigate his alibi to the Indiana Court of Appeals and the Indiana Supreme Court. ECF 9-9; ECF 9-12. The Warden argues that this claim was denied on independent and adequate State ground because the Indiana Court of Appeals found that McClung violated Ind. App. R. 46(a)(8) by failing to support his argument with appropriate citations to legal authorities and the evidentiary record. "[Federal courts] will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). Specifically, the Indiana Court of Appeals remarked, "In his argument, McClung does not assert what additional information may have been gained from further investigation and how the

absence of that information prejudiced his case." ECF 9-11 at 11. However, the appellate court also appeared to conclude that McClung had failed to demonstrate that trial counsel's omission would have likely affected the outcome of his case as required to prevail on an ineffective assistance claim under *Strickland v. Washington*, 466 U.S. 668 (1984). Given the substantial overlap between the State issue and the federal issue here, the court cannot find that the Indiana Court of Appeals rejected this claim on a State law ground that is independent of the federal question of whether McClung received ineffective assistance of trial counsel. For purposes of this order, the court will assume that this claim is properly exhausted.

McClung did not present his claim that trial counsel failed to investigate a disinterested witness at any level of the State courts. ECF 9-9; ECF 9-12; ECF 10-3 at 14-45, 126-35. Therefore, this claim is procedurally defaulted.

McClung asserts that the court should excuse procedural default because he proceeded pro se during the post-conviction stage. A habeas petitioner can overcome a procedural default by showing both cause for failing to abide by state procedural rules and a resulting prejudice from that failure. *Wainwright v. Sykes*, 433 U.S. 72, 90 (1977); *Wrinkles v. Buss*, 537 F.3d 804, 812 (7th Cir. 2008). "Cause for a procedural default exists where something external to the petitioner, something that cannot fairly be attributed to him[,]… 'impeded [his] efforts to comply with the State's procedural rule.'" *Maples v. Thomas*, 565 U.S. 266, 280 (2012). As a general rule, "[n]egligence on the part of a prisoner's postconviction attorney does not qualify as cause." *Id.* The exception is that "[i]nadequate assistance of counsel at initial-review collateral proceedings may

establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Martinez v. Ryan*, 566 U.S. 1, 9 (2012); *Brown v. Brown*, 847 F.3d 502 (7th Cir. 2017). "[A] prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Id.* at 14. McClung does not identify the disinterested witness by name, nor does he offer any suggestion that investigating this witness would have affected the outcome of the case. Because McClung has not demonstrated that this claim is substantial, the *Martinez* exception does not apply to excuse the procedurally defaulted nature of his claim.[1]

## STANDARD OF REVIEW

"Federal habeas review . . . exists as a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Woods v. Donald*, 135 S.Ct. 1372, 1376 (2015) (quotations and citation omitted).

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

---

[1] The court had previously denied McClung's motion to amend his petition to add claims of ineffective assistance of appellate counsel, reasoning that these claims were not presented to the Indiana Supreme Court and that the amendment would thus be futile. ECF 18. The *Martinez* exception also would not have applied to excuse the procedurally defaulted nature of these claims because it operates to excuse only ineffective assistance of trial counsel claims and only at the initial review level. *See Martinez*, 566 U.S. at 16 ("The holding in this case does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings . . . ."); *Davila v. Davis*, 137 S. Ct. 2058, 2063 (2017) (declining to extend the *Martinez* exception to ineffective assistance of appellate counsel claims).

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

[This] standard is intentionally difficult to meet. We have explained that clearly established Federal law for purposes of §2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions. And an unreasonable application of those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice. To satisfy this high bar, a habeas petitioner is required to show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Woods,* 135 S. Ct. at 1376 (quotation marks and citations omitted). Criminal defendants are entitled to a fair trial but not a perfect one. *Rose v. Clark*, 478 U.S. 570, 579 (1986). To warrant relief, a state court's decision must be more than incorrect or erroneous; it must be objectively unreasonable. *Wiggins v. Smith*, 539 U.S. 510, 520 (2003). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quotation marks omitted).

DISCUSSION

McClung argues that he is entitled to habeas relief because trial counsel failed to investigate and present his alibi defense. He focuses on trial counsel's performance with respect to three purported alibi witnesses: Amber Burks-Goble, David Anderson, and Michelle McClung, his mother. To prevail on an ineffective assistance of counsel claim in the State courts, a petitioner must show that counsel's performance was deficient and

that the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668 (1984). There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690–91.

The test for prejudice is whether there was a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a probability "sufficient to undermine confidence in the outcome." *Id*. at 693. In assessing prejudice under *Strickland* "[t]he likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011). However, "[o]n habeas review, [the] inquiry is now whether the state court unreasonably applied *Strickland*." *McNary v. Lemke*, 708 F.3d 905, 914 (7th Cir. 2013). "Given this high standard, even 'egregious' failures of counsel do not always warrant relief." *Id.*

Before trial, trial counsel filed a notice of alibi asserting that McClung was at a Boys and Girls Club location at the time of the robbery and listing Amber Burks-Goble and David Anderson as witnesses. ECF 1-3 at 16-17. At trial, the evidence established that the drug transaction had been scheduled to occur at about 5:00 p.m. and that the

first responders began to arrive shortly after 5:00 p.m. Trial Tr. 48, 100. The victim and three co-defendants testified that McClung was present at the apartment building during the robbery and shooting. *Id.* at 105, 268, 289, 311. The victim's friend and a neighbor were not able to identify McClung but testified that there were four assailants, and their descriptions of the assailants, though vague, were consistent with McClung. *Id. at* 156-58, 183-88. The prosecution also introduced evidence that McClung's fingerprints were found on a plastic bag in an apartment in the building where the incident occurred. *Id.* at 399-400.

Ten years after the trial, at a post-conviction evidentiary hearing, Amber Burks-Goble described her relationship with McClung at the time of the incident by testifying, " Um, he was my best friend. We, um, were together a lot. We had physical relations also." ECF 10-2 at 10-12. She testified that, on the day of the incident, she first encountered McClung between 5:30 p.m. and 6:00 p.m. when she picked him up at the Boys and Girls Club. *Id.* When a police officer attempted to contact her in connection with the case, she left him a voicemail but made no further efforts to follow up or to share her account with law enforcement or at trial. *Id.*

David Anderson, a friend of McClung, testified that he spoke with McClung at the Boys and Girls Club at about 5:10 p.m. or 5:15 p.m. *Id.* at 15-19. He gave a statement to the police and attempted to testify at trial, but trial counsel declined to present him as a witness. *Id.* Michelle McClung, McClung's mother, testified that, on the day of the incident, she picked up McClung at his house at 4:30 p.m. and dropped him off at the Boys and Girls Club at 5:00 p.m. *Id.* at 22-29. She had extensive communication with

trial counsel regarding McClung's alibi defense. *Id.* McClung testified that he provided trial counsel with a list of all the names present on the notice of alibi filed in his criminal case and also informed trial counsel that his mother could establish his alibi. *Id.* at 34-37.

Trial counsel testified that he discussed an alibi defense with McClung and filed a notice of alibi. PCR Ex. A. He spoke with McClung's mother for assistance with investigating the alibi defense. *Id.* He ultimately decided not to pursue the alibi defense at trial because, based on what McClung had told him, they had seen McClung at the Boys and Girls Club on the day of the burglary but could not provide a specific time. *Id.* He also testified that no alibi witnesses had reached out to him and that as a general rule, he was reluctant to force any witnesses to testify on behalf of the defense due to the risk that such witnesses might also offer testimony that was harmful to the defense. *Id.*

The Grant Circuit Court determined that neither Burks-Goble nor Anderson were technically alibi witnesses as they could not place him at the Boys and Girls Club at the time the shooting occurred. ECF 10-3 at 73-96. The Grant Circuit Court found that Burks-Goble's testimony was not credible given her close relationship to McClung and her lack of effort in contacting trial counsel about her account. *Id.* It also found that the testimony of McClung's mother was not credible given the level of assistance she provided to trial counsel with the alibi defense and that her account was raised for the first time in a post-conviction hearing nearly a decade after trial. *Id.* The Grant Circuit Court further concluded that McClung could not demonstrate prejudice given the strength of the prosecution's case, including numerous eyewitnesses and fingerprint

evidence. *Id.* On appeal, the Indiana Court of Appeals affirmed the decision of the lower court, finding that McClung had not demonstrated clear error warranting reversal. ECF 9-11.

After reviewing the record, the court cannot conclude that the State courts made an unreasonable determination with respect to this claim. The State courts determined that the testimonies of Burks-Goble and McClung's mother were not credible and found that the Burks-Goble and McClung's mother did not have material information with respect to an alibi defense. McClung does not explain how these credibility determinations were unreasonable, nor does he rebut the determinations with clear and convincing evidence to the contrary. Therefore, the court must presume their correctness pursuant to 28 U.S.C. § 2254(e)(1). Given their lack of material information, trial counsel's decision not to interview them about the alibi defense could not have affected the outcome of the case. While the State courts did not question Anderson's credibility, they reasonably found that his testimony that he saw McClung at 5:10 or 5:15 p.m. did not establish an alibi because the crime occurred before 5:00 p.m.

Finally, the court agrees that the evidence at trial indicating McClung's presence at the scene of the crime was overwhelming. The victim and three co-defendants testified directly to his presence; a neighbor and the victim's friend testified that they saw four men in pursuit of the victim, though they were unable to identify McClung at trial; and McClung's fingerprints were identified on a plastic bag discovered in the apartment building where the crime occurred. Therefore, the claim that trial counsel failed to investigate the alibi defense is not a basis for habeas relief.

12

## CERTIFICATE OF APPEALABILITY

Pursuant to Section 2254 Habeas Corpus Rule 11, the court must grant or deny a certificate of appealability. To obtain a certificate of appealability under 28 U.S.C. § 2253(c), the petitioner must make a substantial showing of the denial of a constitutional right by establishing "that a reasonable jurist could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). For the reasons explained in this order, there is no basis for encouraging McClung to proceed further.

For these reasons, the court DENIES the habeas corpus petition (ECF 1); DENIES a certificate of appealability pursuant to Section 2254 Habeas Corpus Rule 11; and DIRECTS the clerk to enter judgment in favor of the Respondent and against the Petitioner.

SO ORDERED on February 2, 2022.

s/ Holly A. Brady
JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT